### Ex parte CHIN SHUE WEE.

(District Court, D. Massachusetts. May 2, 1921.)

No. 1965.

1. **Aliens** ⊂⇒54—**Jurisdiction without process ceases on admission of alien before appeal by dissenting board member.**

Under Immigration Act, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), and Immigration Rules 17, 22, regulating appeals from the orders of the Board of Special Inquiry excluding or admitting an alien, the jurisdiction of the board over the alien ceases when the alien is actually admitted before an appeal is taken, which would stay the or-

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

der of admission, unless the alien is subsequently arrested on process, and any practice of the board to the contrary is invalid.

2. Aliens ☞54—Voluntary return of immigrant does not render detention without process legal.

Where an alien, who had been admitted before an appeal was taken from the order of the Board of Special Inquiry, thereafter voluntarily returned on request of the board, such return did not render legal his subsequent detention by the board without process.

Habeas corpus proceedings by Chin Shue Wee for discharge from detention by the Immigration Commissioners. Writ issued.

William C. Prout, of Boston, Mass., for petitioner.
The United States Attorney, opposed.

MORTON, District Judge. Habeas corpus to the Immigration Commissioners. The petitioner's contentions are: (1) That having been actually discharged from detention and admitted into the country under the decision of the Board of Special Inquiry, before an appeal was taken on behalf of the government, that proceeding was terminated, and he could not be rearrested, except upon a proper warrant, which admittedly was not issued; and (2) that the Secretary acted unfairly and in violation of the petitioner's fundamental rights in reversing the Board of Special Inquiry and excluding the petitioner.

As to the first question: The facts are not in dispute and are as follows: At the conclusion of the hearings before the Board of Special Inquiry, the board voted to admit the applicant. No appeal was at that time taken by the dissenting member. In accordance with the usual practice in the department, the decision was immediately put into effect; the applicant was notified of his admission; he was given a slip which released his baggage; he presented this slip at the baggage room of the detention station and received his baggage; and he thereupon left the station with the full knowledge and permission of the immigration officers, who understood that he had been legally admitted to the country. Shortly afterwards the dissenting member of the board gave notice of an appeal. A friend of the applicant was sent after him, and found him on the street about a quarter of a mile from the station. He told the applicant that his presence was desired at the immigration station, and the applicant went back with him. Arriving there, he was again placed in detention.

The Immigration Rules do not explicitly provide as to the time when an appeal shall be taken by a dissenting member of the board. They say, "An appeal may also be taken by a board member who dissents from a majority vote to admit" (Rule 17, subd. 2), and that "Appeals must be filed promptly" (Rule 17, subd. 3). An alien loses his right of appeal, except in the discretion of the immigration officer, unless it is taken within forty-eight hours after the decision. By the practice of the department, an appeal by a dissenting member of the board from an order of admission is taken at the time when the decision of the board to admit is made, and it stays the admission pending the appeal. Without such an appeal the vote becomes effective at once. The admission of this alien was in accord with the established practice.

[1] After an alien has been admitted, the case is regarded as closed before the Immigration tribunal. If thereafter it develops that the admission was procured by fraud, the alien cannot be retaken and deported, except upon warrant proceedings under section 19 of the Immigration Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj) and rule 22, which provide fully for such cases. The original jurisdiction to hold and exclude is apparently based on the custody of the alien's person acquired at the time of his landing and continued by his detention. Once the alien has been formally discharged, and the discharge has become practically effective, jurisdiction under the original proceeding is regarded as having expired. This is evidently the view on which the department regulations are based, and which, I think, is assumed by section 19 of the act. It is certainly a reasonable view. The original proceedings provide no process of arrest; for immigration officers to attempt without process to take into custody aliens who have been formally admitted, wherever they might be found, would be of doubtful legality and open to grave practical objections.

[2] In this case the order of admission became effective and the alien was completely discharged from custody. That, I think, terminated the proceeding; and it could not be revived by the belated action of the dissenting inspector in taking an appeal. If the practice in the department is not as I understand it, and in fact authorizes the rearrest of aliens that have been formally admitted and released, it must, for the reasons suggested, be held invalid. The fact that the alien, in ignorance of his rights, voluntarily returned, does not render his detention legal.

It follows that the petitioner is entitled to the writ. It is unnecessary to pass upon the other question.

Writ to issue.