**LOUIE HING FONG v. NAGLE, Commissioner of Immigration.**

No. 6556.

Circuit Court of Appeals, Ninth Circuit.
Nov. 30, 1931.

Joseph E. Isaacs and Alan H. Critcher, both of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Wm. A. O'Brien, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

SAWTELLE, Circuit Judge.

Ng Ah On claims admission to the United States as the son of Ng Yow Ngan, whose American citizenship is conceded by the government. At the hearing before the Board of Special Inquiry appeared the petitioner, Louie Hing Fong, and the applicant, Ng Ah On. A deposition of Ng Yow Ngan, the alleged father, was taken before an immigration inspector at San Antonio, Tex., and forwarded to the immigration authorities at Angel Island.

There is little before us for review. It is true that the alleged father has testified consistently on six occasions since July 3, 1913, that he had a wife, Wong Shee, and a second son, Ng On, who was born October 6, 1911. It would appear from his statements that he has four sons, but in 1928

Ng Ah Wah, the alleged oldest son, applied for admission into the United States, was excluded and deported. Consequently, none of the alleged sons of Ng Yow Ngan have been admitted into the United States. This latter fact differentiates this case from that of Young Len Gee, 53 F.(2d) 448, decided by this court November 13, 1931.

There were four discrepancies on which the Board of Review affirmed the exclusion order of the Board of Special Inquiry: The first had to do with a disagreement between the applicant and his witness, Louie Hing Fong, as to the partitions and doors in the schoolroom at Sunning City; the second with a conflict in the testimony of the applicant and that of his alleged father with regard to the openings in the wall around the village; the third related to the distance of the Ung Sip market from the home village and whether applicant was born in the Nen On or the Suey Dai How Village.

In the fourth discrepancy, the alleged father testifies, as he did in 1928, that in the spring of each of the three years when he was last at home, 1926, 1927, and 1928, all of his sons accompanied him on his visits to the ancestral graves, and further that his sons cleared the grass away from the grave of their paternal grandfather and grandmother and heaped up the mound with dirt; the applicant testifies that he never accompanied his father to any of the ancestral graves during the latter's last visit to China, and, further, that he accompanied one of his brothers on only one occasion when he was thirteen or fourteen years old, which would be prior to the time of his alleged father's last visit to China. The Board of Review went on to say, in this connection: "The prominence of this rite of visiting and worshipping at ancestral graves in the family and religious life of the Chinese would make it very difficult to believe that such a disagreement as this would appear in the testimony if the claimed relationship between the applicant and his alleged father were real."

Whatever might have been our decision on the discrepancies and the importance to be ascribed to them, they are sufficient to uphold the exclusion order of the Board of Special Inquiry and the Board of Review and do not indicate capricious or arbitrary action on the part of the boards.

Appellant contends that the immigration officials caused him to waive an important right and deprive him of the right to call an important witness in his behalf, but

we do not so read the record. Appellant was asked if he wished to present any other witnesses besides his alleged father and Louie Hing Fong, and he answered that he did not, unless the evidence presented was insufficient to establish his claim, when he would ask Lee Bun Ngew of Sacramento to appear. Applicant was then advised that the rules required that all witnesses be heard at the same time, and the board said:

"Q. If Lee Bun Ngew is to appear in your behalf he must do so at the same time all the other witnesses do. Did you wish to have Lee Bun Ngew appear as your witness? A. That is only in case I have not sufficient evidence to land.

"Q. You are again advised that if you wish to have Lee Bun Ngew, or any other witness, appear for you he or they must appear at the same time any other witnesses appear for you, do you understand?"

Only then did the appellant waive his right to have Lee Bun Ngew appear. The alleged father in San Antonio made the same waiver, but it appears in the record that the government was willing to defer the hearing until Lee Bun Ngew could appear, if his appearance was desired. Both appellant and his alleged father were fully informed as to the procedure to be followed, and it cannot be said that they were coerced or inveigled into signing the waivers.

There is nothing in the record to show that the action of the Board of Special Inquiry was arbitrary or capricious, or that there was a denial of due process of law, and the judgment of the lower court must be affirmed.

Judgment affirmed.